**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry Lamont DONALD, Defendant–
Appellant.**

No. 03–1585.

United States Court of Appeals,
Sixth Circuit.

Aug. 12, 2004.

**430**

Michael Hluchaniuk, Asst. U.S. Attorney, U.S. Attorney's Office, Bay City, MI, for Plaintiff-Appellee.

David C. Tholen, Federal Public Defenders Office, Detroit, MI, for Defendant-Appellant.

Before KRUPANSKY and GILMAN, Circuit Judges; and MAYS, District Judge.*

## OPINION

GILMAN, Circuit Judge.

Larry Lamont Donald was on supervised release after incarceration for a fed-

eral felony offense when he allegedly drove a red pickup truck into a car driven by his ex-wife's new boyfriend, Evan Hill, forcing him off the road. The district court found that this assaultive conduct, along with Donald's possession of a controlled substance and failure to keep his probation officer informed of his current address, violated the conditions of his release. Accordingly, the court revoked Donald's supervised release and sentenced him to 24 months of additional imprisonment.

Donald argues that there was insufficient evidence to support the charge that he assaulted Hill. He also contends that the court erred by not following the sentencing range suggested by the relevant policy statement in the United States Sentencing Guidelines Manual. Because a preponderance of the evidence showed that Donald committed the assault, and because the district court properly applied the relevant statutory factors in imposing the new sentence, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In 1996, Donald was sentenced to 72-months' imprisonment and three years of supervised release as a result of his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He began serving his term of supervised release in February of 2002. In February of 2003, a warrant was issued for Donald's arrest based on alleged violations of the conditions of his supervised release. The government contended that Donald had (1) failed to notify his probation officer about his change of residence, (2) used a pickup truck as a dangerous weapon, and (3) com-

---

* The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

mitted a new crime, i.e., assault with the aid of a pickup truck and a handgun.

Donald requested a hearing on the charges, which the district court granted. At the hearing in April of 2003, the court heard testimony from Probation Officer Dennis Roy, Police Officer Douglas Stacer, and Federal Defender's Office Investigator David Gentry. Roy testified that despite Donald having said that he was living with his aunt, Roy had been unable to reach Donald at the aunt's residence in October and November of 2002, and that his first contact with Donald in 2003 was at the court hearing. Donald also failed to report to Roy that he was under investigation for a criminal offense in December of 2002.

Stacer testified that on December 4, 2002, he and another officer responded to a report of an assault on Evan Hill, who was dating Donald's ex-wife. Hill said that Donald, who was driving a red pickup truck, deliberately rammed the car that Hill was driving, forcing Hill off the road. After the incident, Hill went home to call the police. While waiting for them to arrive, Hill alleges that Donald drove by and pointed a handgun at him. Stacer testified that the damage to Hill's car was consistent with Hill's description of the incident.

After speaking with Hill, Stacer and another officer proceeded to the residence of Donald's aunt to look for him. Their route took them past the spot where the alleged incident took place. Stacer testified that he observed debris at the scene that was consistent with an automobile collision. When they arrived at the home of Donald's aunt, she told them that Donald was no longer living with her.

The officers caught up with Donald later that day. He was riding as a passenger in a red pickup truck driven by Cavin Madison. Madison acknowledged that Donald had been driving the pickup earlier that day and had intentionally struck Hill's car. But Madison said that they had not driven by Hill's house nor had Donald brandished a handgun after the incident. Donald denied driving the pickup, denied knowing Hill, and denied being in an accident earlier in the day. He did admit, however, that he was living at the Jackson Hotel rather than with his aunt.

Neither Hill nor Madison testified at Donald's revocation hearing. Instead, Stacer testified regarding their statements to him about the car incident. The district court ruled that the government had failed to show, by a preponderance of the evidence, that Donald was carrying a firearm on the day that he was stopped. Regarding Donald's failure to inform Roy about his current residence, the court found that Donald had clearly violated that condition of his supervised release. The court also held that Donald had used the red pickup truck as a "dangerous weapon" to ram Hill's car, and that his conduct constituted a "felonious assault." Finally, the court found a fourth violation of the conditions of Donald's supervised release—his possession and use of a controlled substance.

As punishment for these violations, Donald requested that the court sentence him at the bottom of the suggested sentencing range provided in the policy statements of Chapter 7 of the Sentencing Guidelines, which is 12–18 months. Donald also requested that he be allowed to serve his time at a community corrections center where he could receive drug treatment and be able to obtain some kind of employment. The district court instead sentenced Donald to serve 24 months in a federal prison, the statutory maximum for his violations.

Donald filed this timely appeal, contending that there was an insufficient basis to find that he had committed a criminal as-

sault. And even if he had, Donald contends that the district court should have sentenced him according to the suggested range in the policy statement.

## II. ANALYSIS

### A. Donald's alleged violations of the terms of his supervised release

We review a district court's finding that a defendant has violated the terms of his supervised release under an "abuse of discretion" standard. *United States v. Stephenson,* 928 F.2d 728, 731 (6th Cir.1991). In order to reincarcerate Donald, the district court had to find, by a preponderance of the evidence, that Donald had violated a condition of his supervised release. *See United States v. Lowenstein,* 108 F.3d 80, 85 (6th Cir.1997). The court, as part of the revocation proceedings, "may consider hearsay if it is proven to be reliable." *Stephenson,* 928 F.2d at 732.

■ In the present case, Donald argues that there was insufficient evidence to support the conclusion that he had used the red pickup truck as a "dangerous weapon," or that the collision with Hill's car was an assault as opposed to a regular traffic accident. Donald also complains that the government did not produce either Hill or Madison to testify at the revocation hearing. Instead, the government relied solely on the testimony of the investigating officer, Stacer, who repeated the statements made to him by Hill and Madison. Because Hill was involved with Donald's ex-wife, Donald further contends that Hill may have wanted to set Donald up. Donald also questions the credibility of Madison, who has a prior felony conviction. Hill and Madison, Donald argues, should have appeared at the revocation hearing so that the district court could assess their credibility regarding the events of December 4, 2002.

■ Based upon our review of the record, we conclude that the district court did not err in considering the hearsay statements of Hill and Madison as presented by Stacer. *See Stephenson,* 928 F.2d at 732. Stacer interviewed both men separately, and the two had no known opportunity or motive to coordinate their accounts of the incident. Yet they both told essentially the same story. The only material difference in what they told Stacer concerned the issue of whether Donald brandished a gun. As a consequence, the district court held that it could *not* find, by a preponderance of the evidence, that Donald was carrying a firearm. But as to the other aspects of Donald's conduct, Hill and Madison were in agreement that Donald had driven a red pickup truck on December 4, 2002 and had used it to intentionally ram Hill's car. Stacer personally observed the debris at the scene of the incident, as well as the damage to Hill's car, and testified that it corroborated Hill's and Madison's description of the event in question.

Because there are two independent but nearly identical accounts regarding Donald's conduct, which are in turn corroborated by physical evidence, we conclude that the district court did not abuse its discretion in finding, by a preponderance of the evidence, that Donald engaged in a felonious assault with a dangerous weapon. We therefore affirm the district court's determination that Donald violated the terms of his supervised release.

### B. Donald's sentence of imprisonment following the revocation of his supervised release

■ We review the sentence imposed by a district court upon revocation of a defendant's supervised release under an "abuse of discretion" standard. *United States v. Washington,* 147 F.3d 490, 491 (6th Cir.

1998). If the district court considered the relevant statutory factors set forth in 18 U.S.C. § 3553, and the new sentence is not plainly unreasonable, we will affirm the district court's judgment. *United States v. McClellan,* 164 F.3d 308, 309 (6th Cir. 1999). This court in *Washington* summarized the § 3553 factors as encompassing "the nature of the offense; the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment; any guideline range for sentencing; guideline policy statements; and avoidance of unwarranted disparities." 147 F.3d at 491 (quotation marks omitted).

The United States Sentencing Commission has issued "policy statements," rather than formal guidelines, for resentencing a defendant who has violated the conditions of his supervised release. U.S. Sentencing Guidelines Manual § 7. These "policy statements are merely advisory and do not bind the district court." *Washington,* 147 F.3d at 491. The district court's sentence must, however, reflect consideration of the factors set forth in 18 U.S.C. § 3553. Ritualistic incantation of each factor is not required, but the "court must provide at least an indication of its reasons for imposing a sentence that exceeded the recommended sentencing range." *McClellan,* 164 F.3d at 310.

The district court found that Donald committed three violations of the conditions of his supervised release, which taken together were characterized by the Probation Department as a "Grade B" violation. U.S. Sentencing Guidelines Manual § 7B1.1. Coupled with Donald's criminal history category of IV, the suggested sentencing range was 12–18 months. U.S. Sentencing Guidelines Manual § 7B1.4. The district court, however, chose to sentence Donald at the statutory maximum of 24 months for the following reasons:

The defendant having been found guilty of these [violations], the Court having considered the alternatives and the recommended guideline range as I've indicated earlier of twelve months minimum, I think a statutory requirement of twelve months minimum, in fact, in view of the controlled substances, a guideline recommended maximum of eighteen months and a statutory maximum of twenty-four months.

In further consideration of the safety of the public, the defendant's criminal history and the specific nature and assaultive nature of the underlying event, the Court revokes the defendant's supervised release and sentences him to serve a term of twenty-four months in the custody of the United States Bureau of Prisons.

I will not make a recommendation, again, as I did in the first sentencing for drug treatment. I did that then. I understand that he has undergone drug treatment as well, Insight, pointed out to the testimony here [sic] during the time of his supervised release.

He has breached the trust of the Court and having done so in a rather dangerous way, in my opinion. It's even without the indications of firearm, a continuing firearm use. And I consider here fully the implications of a domestic dispute and the passions that rage in such circumstances. I take that into account. As a matter of fact, I think that that's rather an aggravating than a mitigating factor.

People die in the consequences of those kinds of marital passions and romantic triangle and circumstances as we've heard described here. It is rather more dangerous than a rather less dangerous situation, in my opinion. Considering all

of those things, that is the sentence of the Court.

(JA 137–138)

As excerpted above, the district court's reasons for imposing its sentence on Donald reflect the considerations set forth in 18 U.S.C. § 3553. The court examined the nature of the offense ("in further consideration of the . . . assaultive nature of the underlying event"); the need to deter criminal conduct and protect the public ("people die in the consequences of . . . marital passions. . . . It is a rather more dangerous than a rather less dangerous situation . . . ."); and explicitly considered the recommended sentencing range. *See McClellan*, 164 F.3d at 310 (noting that the court of appeals prefers that a district court make express reference to the recommended sentencing range).

■ Donald argues, however, that the district court erred by not discussing his request to be placed in a community corrections center, where he could have obtained drug treatment and possibly gained employment. Indeed, one of the statutory factors to consider under § 3553 is defendant's "needed educational or vocational training, medical care, or other correctional treatment. . . ." 18 U.S.C. § 3553(a)(2)(D). Although perhaps not explicit enough for Donald, the district court did reference Donald's request. The court stated that it "will not make a recommendation, again, for drug treatment," partly because Donald had undergone treatment before and had "breached the trust of the Court." We have held, moreover, that "a sentencing court need not recite any 'magic words' explaining . . . how it weighed the factors set out in 18 U.S.C. § 3553. . . ." *McClellan*, 164 F.3d at 310.

"The statute's mandate is . . . satisfied if, as in the present case, the district court's explanation of the sentence makes it clear that it considered the required factors." *Washington*, 147 F.3d at 491. And we will not reverse simply because the sentence imposed exceeds that recommended in the policy statement. *Id.; see also United States v. West*, 59 F.3d 32 (6th Cir.1995) (affirming the district court's imposition of a sentence according to the statutory maximum as opposed to the term suggested in the policy statement).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.